SO ORDERED.

SIGNED this 5 day of February, 2014.

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

| | |
|---|---|
| MARK A. GODLEY, SR., | CHAPTER 12 |
| TIFFANY L. GODLEY, | CASE NUMBER: 11-03953-8-RDD |
|     DEBTORS | |

_____

| | |
|---|---|
| MARK A. GODLEY, SR., | ADVERSARY PROCEEDING |
| TIFFANY L. GODLEY, | NUMBER: 12-00263-8-RDD |
| RICHARD M. STEARNS, TRUSTEE, | |
|     PLAINTIFFS, | |
|     v. | |
| OPEN GROUNDS FARM, INC., | |
|     DEFENDANT. | |

### ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT FOR DEFENDANT

Pending before the Court is the Plaintiffs' Motion for Summary Judgment and the accompanying Memorandum of Law In Support of Plaintiffs' Motion for Summary Judgment (the "Plaintiffs' Memo") filed by Mark A. Godley, Sr., Tiffany L. Godley, and Richard M. Stearns, Trustee (the "Plaintiffs") on August 28, 2013, the Response and Incorporated

1

Memorandum of Law filed by Open Grounds Farm, Inc. (the "Defendant") on September 18, 2013, and the Reply In Support of Plaintiffs' Motion for Summary Judgment filed by the Plaintiffs on September 25, 2013. The Court conducted a hearing on December 12, 2013, in Greenville, North Carolina to consider these matters. At the conclusion of the hearing, the Court took this matter under advisement. On January 14, 2014, the Court entered an Order and Notice pursuant to Federal Rule of Civil Procedure 56(f) giving the parties until February 3, 2014, in which to request a hearing, file affidavits, and supplemental briefs regarding entry of summary judgment in favor of the nonmovant Defendant.

On February 3, 2014, the Defendant filed a Memorandum of Law in Support of Summary Judgment in Favor of Defendant (the "Defendant's SJ Memo"). The Defendant's SJ Memo briefly reemphasizes the arguments made in the Defendant's Response and Incorporated Memorandum of Law. On February 3, 2014, the Plaintiffs filed a Request for Hearing Regarding Summary Judgment and Supplemental Brief (the "Plaintiffs' Request and Brief"). In addition to requesting a hearing regarding summary judgment in favor of the Defendant, the Plaintiffs' Request and Brief states that those arguments and authorities contained in the materials previously submitted by the Plaintiffs demonstrate that the Debtors are entitled to summary judgment on the claims set forth against the Defendant in the Complaint. Further, the Plaintiffs' Request and Brief succinctly reemphasizes arguments made in the Plaintiffs' Memo.

On February 3, 2014, Richard M. Stearns, chapter 12 Trustee, a named Plaintiff, filed the Trustee's Recommendation On Plaintiffs' Motion for Summary Judgment (the "Trustee's Recommendation"). In the Trustee's Recommendation, the Trustee states that this case is in a position to be resolved by summary judgment and, even though he is a conduit plaintiff in this case, he recommends that summary judgment in favor of the Plaintiffs be denied. The Trustee

sets forth various arguments why 11 U.S.C. § 545 does not provide the authority to avoid transfers for rent on the facts of the case at bar. Moreover, the Trustee argues that the Plaintiffs are not entitled to set aside the unperfected consensual security agreement between the debtors and the Defendant. The Trustee asserts 11 U.S.C. § 544(a)(1) is irrelevant because the transaction was prepetition and the monies were paid long ago and are not recoverable. Such concessions by the chapter 12 Trustee, a named Plaintiff, do irreparable harm to the arguments of the Debtor Plaintiffs. Accordingly, for the reasons set forth herein, a decision by this court is timely and appropriate without further hearing.

## JURISDICTION

Subject matter jurisdiction and jurisdiction over the parties exists pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference of the United States District Court for the Eastern District of North Carolina dated August 3, 1984.

This matter is a core proceeding as set forth in § 157(b)(2) of Title 28 of the United States Code.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c), made applicable in this case through Bankruptcy Rule 7056, states that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*.

3

In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

According to Federal Rule of Civil Procedure 56(f), "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f). If there is no genuine issue of material fact, and the issue to be decided is a matter of law, granting summary judgment for a nonmovant is appropriate after giving the parties notice and a reasonable time to respond. Therefore, a decision by this court is timely.

## FACTUAL HISTORY

Mark A. Godley, Sr. and Tiffany L. Godley (the "Debtors") filed a voluntary petition for relief under chapter 12 of the United States Bankruptcy Code (the "Code") on May 23, 2011. The Debtors' confirmed chapter 12 Plan provides that a portion of Crop Production Services' secured claim will be paid from proceeds from avoidance litigation brought by the Debtors and the chapter 12 Trustee against the Defendant, and that the proceeds beyond the amount of Crop Production Services' secured claim will be shared by other creditors of the Debtors' estate. The Plaintiffs filed their Complaint in this action on October 10, 2012, seeking:

> (a) to avoid, pursuant to 11 U.S.C. § 545(3), a statutory landlord's lien for rent arising pursuant to N.C. Gen. Stat. § 42-15 in favor of the Defendant as to Mark A. Godley, Sr.'s ("Godley") 2010 corn crop grown on the acreage he rented from the Defendant ("2010 Corn");

4

(b) to avoid, pursuant to 11 U.S.C. § 544(a)(1), a consensual lien created by the 2010 Land Rent Agreement (the "Lease") executed by Godley in favor of the Defendant, but not perfected by the filing of a Financing Statement;

(c) to preserve the priority of the avoided liens for the benefit of the Debtors' bankruptcy estate; and

(d) to recover $587,340.00 from the Defendant, which constitutes the value of the avoided lien.

The Defendant filed its Answer on December 13, 2012, largely admitting the factual background of the dispute, but denying the Plaintiffs' right to relief. The parties have conducted discovery, including Godley's deposition, and the parties have participated in a mediated settlement conference.

In 2010, Godley conducted business as "Mark Godley Farms." On January 19, 2010, Godley executed the Lease with the Defendant, wherein Godley agreed to pay $1,037,432.00 to rent approximately 4,715.6 acres of the Defendant's farmland for the 2010 crop year. It is undisputed that the Lease afforded the Defendant a statutory landlord's lien pursuant to N.C. Gen. Stat. § 42-15 on Godley's 2010 Corn to secure Godley's rent obligation under the Lease ("Statutory Lien"). It is also undisputed that the Lease created a consensual lien on Godley's 2010 Corn in favor of the Defendant ("Consensual Lien"). However, the Defendant did not file a Financing Statement to perfect its Consensual Lien. Under the terms of the Lease, installment payments were to be made as follows:

i. $330,092.00 due on January 7, 2010;

ii. $353,670.00 due on April 1, 2010; and

iii. $353,670.00 due on September 1, 2010.

5

Godley paid the first installment in full but only paid $120,000.00 towards the second installment. By April 2, 2010, Godley had paid $450,092.00 to Open Grounds on the Lease, leaving a balance of $587,340.00. Before harvest, Godley agreed to sell all of his 2010 Corn to Goldsboro Milling Company, or its affiliate, Goldsboro Milling Grain Company (collectively, "Goldsboro Milling"). On August 16, 2010, Godley wrote a letter to Goldsboro Milling directing that all proceeds from his 2010 Corn should be paid to the Defendant on account of Godley's rent obligation under the Lease until further notice ("Instructions Letter"). Godley harvested his 2010 Corn during August, September, and October of 2010. After receiving Godley's 2010 Corn, Goldsboro Milling remitted proceeds from the 2010 Corn totaling $587,340.00 to the Defendant. The payments received by the Defendant from Goldsboro Milling fully satisfied Godley's obligation under the Lease in October of 2010, approximately seven (7) months prior to the filing of the Debtors' voluntary petition for relief under chapter 12 of the Code on May 23, 2011. The Lease was paid in full. The Lease, by its terms, expired on December 15, 2010.

## DISCUSSION

**I.     Avoidance Pursuant to 11 U.S.C. § 545(3)**

The central issue in this case is whether the Plaintiffs can avoid, pursuant to 11 U.S.C. § 545(3), the statutory landlord's lien for rent arising pursuant to N.C. Gen. Stat. § 42-15 in favor of the Defendant as to Godley's 2010 Corn, and therefore recover the value of the avoided lien ($587,340.00) from the Defendant.[1]

According to 11 U.S.C. § 545(3), "[t]he trustee may avoid the *fixing* of a statutory lien on

---

[1] According to the Plaintiffs, the value of the avoided lien is $587,340.00 because Godley made payments of $330,092.00 and $120,000.00 toward the $1,037,432.00 he agreed to pay under the Lease, leaving $587,340.00 due and owing. Goldsboro Milling remitted $587,340.00, on behalf of Godley, to the Defendant approximately seven (7) months prior to the filing of the Debtors' chapter 12 petition.

property of the debtor to the extent such lien– . . . (3) is for rent." (emphasis added). The term "statutory lien" means a lien "arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53). According to N.C. Gen. Stat. § 42-15:

> "[w]hen lands are rented or leased by agreement, written or oral, for agricultural purposes, or are cultivated by a cropper, unless otherwise agreed between the parties to the lease or agreement, any and all crops raised on said lands shall be deemed and held to be vested in possession of the lessor or his assigns at all times, ***until the rents for said lands are paid*** and until all the stipulations contained in the lease or agreement are performed, or damages in lieu thereof paid to the lessor or his assigns, and until said party or his assigns is paid for all advancements made and expenses incurred in making and saving said crops. This lien shall be preferred to all other liens . . ."

N.C. Gen. Stat. § 42-15. (emphasis added.)

### A.    "Fixing"

Because the plain text of 11 U.S.C. § 545(3) is unambiguous and the legislature's intentions are evident from the text of the statute, the plain meaning of the statute shall govern. It is well established that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. United States Trustee*, 540 U.S. 526 (2004) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). Section 545(3) reads as follows: "[t]he trustee may avoid the ***fixing*** of a statutory lien on ***property of the debtor*** to the extent that such lien– . . . (3) is for rent." (emphasis added.) Based on a plain reading of § 545(3), the trustee may only avoid "the fixing" of a statutory lien on "property of the debtor." 11 U.S.C. § 545(3).

According to Black's Law Dictionary, "fix" means to "fasten a liability upon." Black's Law Dictionary 136 (6th ed. 1990); see also *In re Merchants Grain,* 93 F.3d 1347, 1356-1357 (7th Cir. 1996). With "ing" added to "fix," a gerund is created. Merriam-Webster Online Dictionary defines "gerund" as a "verbal noun in Latin that expresses generalized or uncompleted action." Merriam-Webster Online Dictionary. 2014. http://www.merriam-webster.com/dictionary/gerund (4 Feb. 2014). Therefore, in the context of 11 U.S.C. § 545, "fixing" presupposes that the lien has not yet affixed and must be defined as a temporal event which has not yet occurred to fasten a liability into a present and definite liability, a secured status. See *In re Merchants Grain,* 93 F.3d at 1356-1357 (explaining that "fixing" refers to a temporal event).

In the case at bar, the Statutory Lien was "fixed" to the 2010 Corn from the time the 2010 Corn was raised until seven (7) months prepetition when the Statutory Lien was extinguished by payment in full of the debt under the Lease. Therefore, there was no statutory lien to "fix" on anything as of the date the chapter 12 case was filed. It is not possible to avoid "the fixing" of a lien that has already fixed and been extinguished seven (7) months prepetition.

On the other hand, if the 2010 Corn would have been in the field where it was grown at the time of the chapter 12 filing, then the trustee might have avoided "the fixing" of a lien at any time postpetition. In *Wedemeier*, the debtors filed for bankruptcy on June 8, 1998, but the trustee neither assumed nor rejected the crop-land leases in effect. *Reiter v. Fokkena (In re Wedemeier),* 237 F.3d 938, 941 (8th Cir. 2001). The leases were deemed rejected on August 7, 1998. The debtors had planted crops in May of 1998, before filing. After filing of the petition, the debtors continued to care for the crops. The Eighth Circuit Court of Appeals found that the Bankruptcy Court did not err in its approval of the trustee's avoidance of the landlord's lien over the crop proceeds. *Id*. Unlike *Wedemeier*, the crops in the instant case had been harvested and sold, and

8

the landlord's lien was extinguished before the time of filing. This Court has found no case law allowing a trustee to avoid a lien to recover rents paid in full prepetition.

Plaintiffs contend that 11 U.S.C. § 545(3) applies to the Statutory Lien arising pursuant to N.C. Gen. Stat. § 42-15 and cite this Court's decision in *Harrell* for that proposition. *In re Harrell*, 55 B.R. 203 (Bankr. E.D.N.C. 1985). After filing under chapter 11, the debtors in *Harrell* were given permission by the Court to lease 250 acres of farm land from W.R. Harrell ("Harrell"). Harrell was granted a landlord's lien on the debtors' 1984 fall soybean crop. The debtors were unable to effectuate a confirmable Plan of Reorganization and their case was converted to a chapter 7. Thereafter, the trustee liquidated the debtors' assets which had not been sold, including sale of the debtors' 1984 fall soybean crop. The debtors' case was converted to a chapter 7 prior to the distribution of any proceeds. The statutory landlord's lien in *Harrell* was still in effect upon conversion. The Court in *Harrell* held that "Mr. Harrell's statutory landlord's lien for rent may be avoided by the trustee pursuant to 11 U.S.C. [§] 545(3)." *Id.* at 205-06.

In *Harrell*, after the chapter 11 case was converted to chapter 7, the chapter 7 trustee "liquidated the debtors' assets which had not been sold, including sale of the debtors 1984 fall soybean crop." *Id.* at 204. Therefore, in *Harrell* the 1984 fall soybean crop on which the statutory landlord's lien had attached had not been sold and there existed undistributed proceeds upon which the lien was asserted. Because the landlord's lien in *Harrell* was still affixed when the case was converted to chapter 7, the chapter 7 trustee was able to avoid the "fixing" of the lien on the undistributed proceeds. In the case at bar, there was no existing lien for rent on the petition date and no undistributed proceeds upon which the lien was asserted.

**B.    Defendant's Statutory Lien was Extinguished Prepetition**

The Statutory Lien on the 2010 Corn was extinguished when the rent obligations under

9

the Lease were paid in full seven (7) months pre-petition, thus rendering § 545(3) inapplicable. The duration of a statutory landlord's lien on the chattels of his or her tenant or the crops raised on the premises is determinative in this case. The North Carolina Supreme Court has interpreted statutory landlord's liens arising pursuant N.C. Gen. Stat. § 42-15 as continuing only until the rent due and owing has been paid in full. *Hall v. Odom*, 240 N.C. 66 (1954). This is unlike some jurisdictions where statutory landlord's liens are viable as long as the underlying lease exists or, under other statutes, where the lien continues until termination of the tenant's occupancy of the premises or for the period the property remained on the premises after lease expiration. *In re Miller Engineering, Inc.*, 398 B.R. 473 (Bankr. S.D. Fla. 2008); *Eason v. Wheelock*, 120 P.2d 319 (1941); *Maberry v. First Nat. Bank of Littlefield*, 351 S.W.2d 96 (Tex. Civ. App. Amarillo 1961).[2]

     N.C. Gen. Stat. § 42-15 reads as follows: ". . . any and all crops raised on said lands shall be deemed and held to be vested in possession of the lessor or his assigns at all times, ***until the rents for said lands are paid*** . . ." (emphasis added). When applying N.C. Gen. Stat. § 42-15 in *Hall*, the North Carolina Supreme Court stated that "***the landlord's lien remains intact until the rent is paid*** and all who deal with a tenant with reference to the crop are charged with notice thereof." *Hall v. Odom*, 240 N.C. 66 (1954).

     In the case at bar, it is undisputed that Godley's rent obligations under the Lease were paid in full in October of 2010, approximately seven (7) months prior to the filing of the Debtors' voluntary petition for relief under chapter 12 of the Code on May 23, 2011. Therefore, there was no statutory lien for rents fixed to the 2010 Corn on the date of the filing of the petition.

---

[2] The Lease in question in this case was a one year lease which terminated on December 15, 2010.

**C.     Legislative History**

Plaintiffs contend that the legislative policy behind § 545(3) is to reduce landlords to the position of unsecured creditors in bankruptcy proceedings. Plaintiffs cite a treatise explaining the intent and effect of § 545(3) as follows:

> Under prior bankruptcy laws, the invalidation of landlord's liens was coupled with a grant of limited priority for certain landlord claims. The priority status has been deleted under the Code, but the lien invalidation is retained. **Thus a lessor may be reduced to the status of a general unsecured creditor.**

4 Norton Bankr. L. & Prac. 3d § 64:5 (emphasis added.)[3]

Plaintiffs reason that the legislative objective of requiring landlords to participate in bankruptcy proceedings as unsecured creditors renders statutory liens avoidable pursuant to § 545(3), even if the statutory lien has been enforced or satisfied prior to the filing of the petition.

Plaintiffs rely on legislative history to arrive at their interpretation of the statute. Even if the Plaintiffs are reading the legislative history correctly, this is not a case where there is a need to look past the statutory text. See *Badlands Trust Co. v. First Financial Fund, Inc.*, 65 Fed.Appx. 876, 879 (4th Cir. 2003) (where the text of the statute itself is not ambiguous, we do not look to the legislative history to create ambiguities). According to the Fourth Circuit Court of Appeals in *Badlands*, "the traditional rule [is] that where there is no ambiguity in the plain language of the statute, a court does not look to the legislative history." *Badlands* at 879; see also *United States v. Gonzales*, 520 U.S. 1, 6 (1997).

Even if the Court considers the legislative history and assumes that Congress' intent behind § 545(3) was that "a lessor may be reduced to the status of a general unsecured creditor" in bankruptcy proceedings, that legislative objective is not applicable on these facts. The Court

---

[3] In the case at bar there was no lease in existence on the date of filing, thus rendering the policy set forth in 4 Norton Bankr. L. & Prac. 3d § 64:5 inapplicable to these facts.

11

does not disagree that under certain circumstances a lessor/landlord may be reduced to the status of a general unsecured creditor.[4] Rather, it is the Court's position that the lessor/landlord in this case should not be reduced to the status of a general unsecured creditor because the lessor/landlord in this case was no longer a lessor/landlord at the time the chapter 12 case was filed. The Defendant ceased having the title of lessor/landlord, and all the legal duties flowing from that position, when the obligation to pay rent under the Lease was fully satisfied seven (7) months prepetition. Therefore, the treatment Congress intended for lessors/landlords in bankruptcy proceedings is not instructive on these facts where there was no lessor/lessee relationship or outstanding rent obligations under the Lease at the time of filing.

Further, the Plaintiffs' assertion that, according to the legislative history, the trustee may avoid a lien pursuant to § 545(3) "even if the lien has been enforced by sale before the commencement of the case," is not determinative in this case. H. Rep. No. 95-595, 95th Cong. 1st Sess. 371 (1977) and S. Rep. No. 95-989, 95th Cong. 2nd Sess. 85 (1978). In the instant case there was no sale to enforce the Statutory Lien. Rather, the Statutory Lien was simply satisfied and extinguished seven (7) months prepetition by payment in full of the rent obligations under the Lease. Therefore, the "enforced by sale" language in the legislative history is not applicable on these facts.[5]

D.     **Absence of Time Limitations for 11 U.S.C. § 545 is Inconsistent with Avoidance Provisions of the Bankruptcy Code**

---

[4] A chapter 7 trustee may very well wait to avoid a statutory lien for rent in existence at the time of filing of petition in order to facilitate a sale of the collateral upon which the lien was affixed. See *Reiter v. Fokkena (In re Wedemeier),* 237 F.3d 938, 941 (8th Cir. 2001).

[5] Plaintiffs argue that *Donahue v. Gunner* (In re Wentworth), 197 Fed.Appx. 579 (9th Cir. 2006) is applicable in this case. For the reasons set forth, *Donahue* is not applicable in the case at bar.

The Bankruptcy Code includes avoidance provisions such as 11 U.S.C. §§ 547 and 548, referred to as "claw-back" or "strong-arm" provisions. Under 11 U.S.C. §§ 547 and 548, a trustee is granted avoidance powers subject to a prescribed time period. Avoidance actions pursuant to § 547 are limited to transactions that occur within ninety (90) days before the bankruptcy case is filed (or up to one year for insiders). Similarly, avoidance actions pursuant to § 548 are limited to transactions that occur within two (2) years before the bankruptcy case is filed. Including such limitations in these provisions promotes the orderly and predictable administration of an estate through avoidance actions.

Unlike 11 U.S.C. §§ 547 and 548, § 545 does not include a time limitation as to transactions that occurred before the bankruptcy case is filed. In other words, there is no "claw back" time frame or "strong-arm" provision set forth in § 545 to allow a trustee to avoid liens that existed and were extinguished prior to the date the bankruptcy was filed. Therefore, either: (1) § 545 was not intended to extend back to a prepetition time period; or (2) the avoidance powers of § 545 have no time limitation.

If Congress had intended § 545 to have time limitations, surely Congress would have written specific time frames as it did in §§ 547 and 548. Moreover, §§ 547 and 548 refer to the trustee's avoidance of "transfers"; whereas § 545 refers to avoiding the "fixing of a lien." This is significant because, as discussed *infra*, "fixing" presupposes that the lien has not yet affixed and must be defined as a temporal event which has not yet occurred to fasten a liability into a present and definite liability.

**E.    Policy Arguments**

Allowing a trustee to have avoidance powers of statutory liens for rent that have no time limitation would bring much uncertainty to the farming and agricultural industry, where renting

13

farm land is essential to many who grow crops for a living. Landlords would be less likely to lease land if, upon bankruptcy, the trustee could avoid any of the landlord's liens that ever existed and were extinguished by payment in full of the lease obligations.[6] If landlords are less likely to lease farm land, many who depend on renting farmland for their livelihood would be harmed. The only apparent alternative that would protect landlords from such divestiture by the trustee would be requiring payment of all rent up front, so that no statutory lien for rent is affixed. It is doubtful that many farmers could afford to pay all rents up front because most farmers depend on the proceeds from the crops grown on the land to pay the rents. Such far reaching and potentially abusive powers in the hands of trustees could significantly affect agricultural farmers. This Court does not believe § 545(3) affords a trustee this kind of unlimited avoidance power. Therefore, the Plaintiffs' Motion for Summary Judgment on the first claim for relief, avoidance of the Statutory Lien pursuant to § 545(3), is **DENIED**. As a matter of law, Defendant is entitled to summary judgment as Plaintiffs' Complaint fails to state a claim for relief. Summary judgment in favor of the Defendant on the first claim for relief is **GRANTED**.

## II.   Avoidance Pursuant to 11 U.S.C. § 544(a)(1)

The Plaintiffs' second claim for relief is that the Consensual Lien created by the Lease, but not perfected by the filing of a financing statement, is avoidable pursuant to 11 U.S.C. § 544(a)(1). By the terms of the Lease, the Lease expired on December 15, 2010. The Lease was paid in full in October of 2010, prior to the expiration of the Lease. Section 544(a)(1) gives the Trustee the position of having a judicial lien on the date of filing of the case. Since the Lease was extinguished seven (7) months prior to filing, there is no unperfected lease at the time of the

---

[6] At the hearing, the Plaintiffs' counsel argued that the Trustee in this case could recover statutory lien rents paid between seventeen (17) and seven (7) months prepetition.

filing of the petition to set aside in favor of the hypothetical judicial lien creditor. Therefore, the Defendant is entitled to summary judgment as a matter of law on the Plaintiffs' second claim for relief, as the allegations fail to state a claim for which relief can be granted.

## III. CONCLUSION

Pursuant to Federal Rule of Civil Procedure 56(f) and Bankruptcy Rule 7056(f), Summary Judgment is **GRANTED** for the Defendant. The Plaintiffs shall have and recover nothing of the Defendant. The Plaintiffs' Complaint is **DISMISSED** with prejudice.

**SO ORDERED.**

### END OF DOCUMENT